IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| BROOKE DURANEY, | ) |
| --- | --- |
| Plaintiff | ) |
| | ) |
| vs. | ) Civil Action No. 10-995 |
| | ) Judge Terrence F. McVerry/ |
| | ) U.S. Magistrate Judge Francis X. Caiazza |
| RACCOON TOWNSHIP, A Political | ) |
| Subdivision and Municipal Corporation; | ) |
| ROBERT SPRINGER, Individually and as | ) |
| Chairman of the Board of Supervisors of | ) |
| Raccoon Twp.; ED MALLOY, Individually | ) |
| and as Supervisor of Raccoon Twp.; JOHN | ) |
| MOORE, Individually and as Supervisor of | ) |
| Raccoon Twp., | ) |
| Defendants | ) |

REPORT AND RECOMMENDATION

I.     RECOMMENDATION

The Plaintiff, Brooke Duraney ("Duraney" or "the Plaintiff"), a former police officer for Raccoon Township ("the Township"), filed a four count Complaint (ECF No. 1) against the Township, and three of its Supervisors, Robert Springer ("Springer"), the chairman of the Township's Board of Supervisors, and two other Supervisors, Ed Malloy ("Malloy"), and John Moore ("Moore"). In Count I, Duraney alleges gender discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C. §§ 2000e et seq. Count II is premised on the same theories under the Pennsylvania Human Relations Act ("PHRA"), 42 Pa. Cons. State. Ann. §§ 951 et seq.[1] Counts III and IV,

---

[1] Analysis of claims under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably. See, e.g., Smith v. Pathmark Stores, Inc., No. 97-1561, 1998 WL 309916, at *3 (E.D. Pa. June 11, 1998) (interpreting the

respectively, allege denial of equal protection, and retaliation for Duraney's exercise of her First Amendment rights in violation of 42 U.S.C. §1983. The Court considers here the Motion to Dismiss to be Treated as a Motion for Summary Judgment (ECF No. 6) filed by the Defendants. The Court will address Counts I and II under the standard applicable to a Motion for Summary Judgment under Fed. R. Civ. P. 56, given that both sides have treated the Motion as such, supplying for the Court's consideration, materials beyond the pleadings. Counts III and IV are directed only to the sufficiency of the Complaint, and will, therefore, be evaluated under the standard governing motions made pursuant to Fed. R. Civ. P 12(b)(6). It is recommended that Summary Judgment be granted as to Counts I and II, and that Counts III and IV be dismissed.

## II. REPORT

**Facts and Procedural Background**

The facts, viewed as they must be, in the light most favorable to the Plaintiff, are straightforward. Duraney alleges that she accepted a job as a part-time police officer with Raccoon Township in the spring of 2006, working approximately twenty-four hours per week. Her job became full-time in the fall of the same year. (Doc. 1 at ¶ 11, 12). Duraney claims that during her tenure, she was treated differently from similarly situated male officers and subjected to a hostile work environment. (Id. at 15). Specifically, she alleges that she: (1) was forced to sign a document to the effect that she was a 'full-time/part-time' police officer and to relinquish medical benefits to which she was entitled; (2) was placed on temporary lay-off in July of 2008; (3) was not paid for processing a suspect's paperwork and was denied the use of a police car to attend a trial; (4) was not allowed to attend mandatory training; (5) was terminated in March

---

two statutes concurrently in a sexual harassment case); Clark v. Pennsylvania, 885 F. Supp. 694, 714 (E.D.Pa.1995) (same in racial discrimination cases).

2009 in retaliation for her statements about Springer's interference with an arrest; and (6) was the victim of on-going discriminatory animus, particularly by Defendant Springer.

On July 7, 2009, Duraney filed a timely charge with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Pennsylvania Human Relations Commission. A right to sue letter was issued on April 10, 2010, and this lawsuit followed.

**Standard of Review**

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (internal quotation and citation omitted). After the Supreme Court's decision in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Summary Judgment pursuant to Fed. R. Civ. P. 56 is appropriate only where there are no genuine issues of material fact. Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323(1986), the non-moving party "must do more

than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586-87 (1986) (emphasis in original removed).

In evaluating the evidence, the Court must view the facts and the inferences to be drawn therefrom in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. At the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. Id. at 249. When examining the record to see if there are genuine issues of material fact, the Court's focus is on issue finding, not on issue resolution.

**Analysis**

**The Title VII Claims**

**Claims Against the Individual Defendants**

The Title VII [2] claims made against the individual Defendants should be dismissed with prejudice, because, as even the Plaintiff agrees, it has been established for years that Title VII does not "comtemplate[ ] the liability of individual employees. See Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir.1997), and Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1077 (3d Cir.1996).

**The Running of the Statute of Limitations**

Title VII, like the PHRA [3] invoked in Count II, "prohibits an employer from engaging in

---

[2] "Title VII . . . makes it unlawful for 'an employer to discriminate against any [employee] with respect to his compensation, terms, conditions, or privileges of employment . . . or . . . to limit . . . or classify his employees . . . in any way which would deprive . . . any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a) (1)-(2).

[3] Analysis of the provisions Title VII and the PHRA is generally similar, as Pennsylvania courts have construed the protections of the two acts interchangeably. See, e.g., Smith v. Pathmark Stores, Inc., No.

4

race or gender discrimination against an employee." Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 131, 318 (3d Cir. 2000). The Court has detailed the acts which Duraney alleges to have constituted gender-based discrimination, and begins its analysis of her Title VII claim by considering the controlling statute of limitations. "Before filing a claim in federal court, a Title VII plaintiff in Pennsylvania must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice." Noel v. The Boeing Co., 622 F. 3d 266, 270 (3d Cir. 2010) (citing Mikula v. Allegheny County of Pa., 583 F.3d 181, 185 (3d Cir. 2009) (per curiam)). "If a claimant fails to exhaust his or her claim within the requisite time period, that claim is administratively barred. This statute of limitations applies to discrete employment actions . . . ." Id. [4]

Duraney alleges in her Complaint that she filed a Title VII charge with the EEOC on July 7, 2009. (Doc. 1 ¶ 17). Counting backward three hundred days from that date, it follows that the only discriminatory acts to survive the statute of limitations are those which took place on or after September 12, 2008. In support of her Title VII claim, Duraney contends that "sometime in 2008" [5] she was required, where male officers were not, to sign "a paper that confirmed her

---

97-1561, 1998 WL 309916, at *3 (E.D. Pa. June 11, 1998) (interpreting the two statutes concurrently in a sexual harassment case); Clark v. Pennsylvania, 885 F. Supp. 694, 714 (E.D.Pa.1995) (same in racial discrimination case).

[4] The Pennsylvania Human Relations Act has a less generous statute of limitations, requiring that administrative complaints be filed within 180 days of the alleged act of discrimination. See West v. Philadelphia Elec. Co., 45 F.3d 744 (3d Cir. 1995). This means that the conduct upon which Duraney bases her PHRA claims would have had to occur on or after January 10, 2009.

[5] Exhibit A, attached to the Defendants' Concise Statement of Material Facts (ECF No. 7) shows that Duraney signed this letter on February 6, 2008, more than three hundred days before the filing of her administrative charge. The same is true with respect to her "temporary lay-off" in July 2008.

employment as a 'full-time/part-time" police officer," (id. at ¶12), thereby relinquishing "any and all full time benefits [then] provided to each full time officer under the collective bargaining agreement dated January 1, 2005." (ECF No. 7 ex. A). Her execution of that document, falls outside of the applicable limitations period, and is not actionable. The same is true as to her lay-off in June 2008.

Despite the fact that this deficiency was brought to her attention in the Defendants' Motion, Duraney failed to amend her Complaint to assign dates and supply additional factual detail pertaining to the alleged discrimination associated with her failure to be paid for processing paperwork and her inability to use a patrol car to attend a trial. Due to the paucity of information in the Complaint, the Court is able to identify only one allegedly discriminatory act - the denial of mandatory training in January 2009 - which falls within the three hundred (or the PHRA's 180) day statute of limitations. [6] Even as to this act, the Complaint is devoid of facts sufficient to raise a plausible inference that the denial of training – even if it could be deemed an adverse employment action within the meaning of Title VII - was the result of gender discrimination. What the Court has before it is nothing "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation" condemned in Iqbal. See 129 S. Ct. 1949 (quoting Twombly, 550 U.S. at 555). Such allegations do not satisfy the standard applicable to motions to dismiss, and cannot possibly survive a motion for summary judgment.

The Plaintiff attempts to save her time-barred allegations by alleging that the Defendants engaged in a continuing violation. In support of this argument, she includes two sentences:

---

[6] Although Duraney also alleges that her ultimate discharge in March 2009 falls within the parameters of Title VII, the Court disagrees, given that Duraney herself articulates a non-discriminatory reason for her discharge. In Count IV of her Complaint, she states that she was terminated – not based on gender or membership in any other protected class - but because of speech relating to Springer's interference with her ability to make an arrest late in 2007.

6

"Plaintiff's cause of action arose on February 6, 2008, when she was forced to sign the paper changing her status from full-time to part-time;" and "[P]laintiff has alleged a continuing violation up through the date of her discharge on March 10, 2009." (Id. at n.2). Pursuant to "continuing violation" doctrine, a plaintiff can pursue a Title VII claim for "conduct that began prior to the filing period *if* he [or she] can demonstrate that the act is part of an ongoing practice or pattern of discrimination . . ." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995) (citations omitted)(emphasis added).

First, the plaintiff must establish that at least one discriminatory act took place within the limitations period. Id. Duraney has not met this requirement. There is not a wisp of factual support for the proposition that the only act occurring within the limitations period - the denial of mandatory training - was motivated by discrimination. Even if the Court assumes, arguendo, that this first requirement has been met, Duraney must also show a continuing pattern of discrimination, as opposed to "the occurrence of isolated or sporadic acts of intentional discrimination." (Id. at 775). The Court of Appeals for the Third Circuit has identified a number of factors to be considered in identifying a continuing violation:

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring . . . or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

Rush at 482 (quoting Berry v. Bd of Supervisors of Louisiana State Univ., 715 F.2d 971 (5th Cir.1983)). A Title VII action may not be based "on conduct that occurred outside the statute of

7

limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct . . ." Id. (quoting Galloway v. Gen. Motors Serv. Parts. Operations, 78 F.3d 1164, 1166 (7th Cir.1996)). In other words, the continuing violation doctrine does not apply where a discriminatory act occurring more than three hundred days before the administrative filing is serious enough that a reasonable person should have realized that she had a substantial claim.

The Court finds that the continuing violation doctrine does not apply here, in that the very first act of discrimination alleged by Duraney - being forced, where male officers were not, to sign a notarized document changing her status from part-time to full-time and relinquishing her right to medical benefits guaranteed by the Township - was sufficiently egregious to have put a reasonable person on notice that she had a significant discrimination claim that should have been filed in a timely manner.

**Title VII – The Hostile Environment Claim**

Duraney also alleges that the conditions to which she was exposed were sufficient to constitute a hostile work environment. In order to sustain a hostile work environment claim,

> [A]n employee must sufficiently plead facts to support reasonable inferences that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a person of the same sex in that position; and (5) the existence of respondeat superior liability.

Forrest v. Owen Jo Roberts Sch. Dist., Civ. Action No. 09-3014, 2011 WL 1196410 at *10 (E.D. Pa. March 31, 2011) (citing Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir.1999)). Although Duraney makes a hostile work environment claim, she does not, as the Court has already observed, elaborate on the scanty allegations already discussed. There simply

8

is simply not enough detail about the few incidents - which took place over a period of years - to allow the Court to conclude that any of the alleged conduct was motivated by intentional gender discrimination, or that the overall course of Duraney's treatment was severe, physically threatening, or sufficiently pervasive to constitute a hostile work environment.

**The Equal Protection Claim Brought Pursuant to 42 U.S.C. § 1983**

For this § 1983 claim against the individual defendants to survive a motion to dismiss, the plaintiff must allege that each and every defendant was personally involved in the gender discrimination alleged. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). A defendant's personal involvement may be shown through "allegations of personal direction [of the deprivation of rights] or of actual knowledge and acquiescence [in the deprivation]." Id. (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)). Such allegations are sufficient to survive a motion to dismiss when they name the individuals responsible, the conduct, the time, and the place of the incident that deprived a plaintiff of his civil rights. Id. at 353 (citing Boykins v. Ambridge Area Sch. Dist., 621 F.2d. 75, 80 (3d Cir. 1980)). The allegations in Duraney's Complaint do not meet this standard. The equal protection claim against the individual defendants should, therefore, be dismissed.

Municipal liability under section 1983 cannot be based on the doctrine of respondeat superior. In order to state a claim against Raccoon Township, then, Duraney must point to more than the actions of its employees. See Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York Dept. of Soc. Serv., 436 U.S. 658, 694 (1978)). She must allege that a municipal or corporate policy or custom caused her injury, and that the policy or custom identified was the "moving force" behind the constitutional

violation. Id. at 404. Because Duraney has alleged none of these essentials, the Equal

Protection claim against Raccoon Township should be dismissed.

**The Section 1983 Claim Alleging Deprivation of Liberty**

Duraney titles Count IV of her Complaint "Deprivation of Liberty (Retaliatory Firing)." In support of this claim, she alleges that "she was retaliated against by defendants as a result of her complaints about . . . Springer's" interference with her attempt to arrest one of his friends. (ECF No. 1 at ¶¶ 28, 29). She contends that . . . she has been deprived of her rights to speak . . . and associate freely, and has been deprived of liberty without due process . . . in violation of the First and Fourteenth Amendments to the United States Constitution," . . . and various provisions of the Pennsylvania Constitution. (Id. at ¶ 30). In her Brief in Opposition to the Motion for Summary Judgment, the Plaintiff clarifies that she is not "claim[ing] any liberty interest in her employment. To the contrary, [she claims] a liberty interest in her right to speak freely. . . ." (ECF No. 15 at 15).

Again, Duraney has failed to provide any factual detail with respect to her claim.[7] The Court is unable to discern to whom she complained, the nature of her complaints, or the context

---

[7] She admits as much in her response to the Motion:

> Very clearly, there is no allegation in [the Complaint] regarding what plaintiff's complaints were, or to whom they were made. On the one hand, they may well have been made at a township meeting. On the other hand, they may well have been made, at least hypothetically, at a bar to a bartender, who happened to repeat them to a township supervisor. At this point, certainly without discovery, it is premature to grant summary judgment on this claim.

(ECF No. 15 at 16). The argument that discovery is necessary in order to supply critical facts relevant to this claim lacks merit, given that all of the relevant facts should be known to the Plaintiff. More importantly, "It is not the function of the Court to divine whether . . . a plaintiff, especially one represented by counsel, needs discovery . . . in order to meet a defendant's motion for summary judgment. If [the plaintiff] could not have responded adequately without . . . discovery, [she] should have filed the

10

in which she made them. What is clear is that her speech concerned her duties as a police officer, and Springer's alleged interference with her ability to make an arrest. Nothing in her Complaint or in her response to the Motion to Dismiss suggests that she spoke as a private citizen. "When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the United States Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). The Plaintiff's claim that her First and Fourteenth Amendment rights were violated should be dismissed. [8] She has failed utterly to plead facts that would "allow[ ] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1940.

### III. CONCLUSION

For the reasons set out above, it is respectfully recommended that, pursuant to the Defendants' Motion to Dismiss to be treated as a Summary Judgment (ECF No. 6), summary judgment be granted with respect to Counts I and II, and that, pursuant to the same Motion (ECF No. 8), Counts III and IV be dismissed with prejudice.

---

appropriate affidavit as mandated under Rule 56[d] of the Federal Rules of Civil Procedure." Mitnik v. Cannon, 789 F. Supp. 175, 176 (E.D. Pa. 1992). This Rule provides:

> If a nonmovant shows by affidavit or declaration that, for
> specified reasons, it cannot present facts essential to justify
> its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations
>     or to take discovery;
> (3) issue any other appropriate order.

[8] Claims premised on the Pennsylvania Constitution should be dismissed as well. Pennsylvania law does not have a statutory equivalent to 42 U.S.C. § 1983 and therefore does not explicitly authorize a cause of damages for a violation of the state Constitution. The vast majority of federal courts to have considered this issue have found that damages are not available. See Ryan v. Gen. Mach. Prod., 277 F. Supp.2d 585, 595 (E.D. Pa. 2003) (collecting cases). This Court should find the same.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.D.2 B, the parties are permitted to file written objections with the district court in accordance with the schedule included in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so *will* waive the right to appeal." <u>Siers v. Morrash</u>, 700 F.2d 113, 116 (3d Cir. 1983) (emphasis added). Any response to objections may be filed in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

/s/ *Francis X. Caiazza*
Francis X. Caiazza
United States Magistrate Judge

Dated: April 26, 2011

cc: All Counsel of Record via CM-ECF